COURT OF CHANCERY
OF THE
STATE OF DELAWARE

LOREN MITCHELL
MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Date Submitted: April 1, 2026
Final Report: July 16, 2026

Peter Sobotta
504 Jacob Lane
Mechanicsburg, PA 17050

Seth A. Niederman, Esquire
Fox Rothschild LLP-Wilmington
1201 N. Market Street, Suite 1200
Wilmington, DE 19801

RE: *Peter Sobotta v. Return Logic, Inc.,*
C.A. No. 2026-0009-LM

Dear Counsel and Mr. Sobotta,

This letter opinion resolves the parties' cross-motions for summary judgment concerning Plaintiff Peter Sobotta's claim for advancement under 8 Del. C. § 145(e) and Article VIII of Return Logic, Inc.'s (the "Company") Third Amended and Restated Bylaws (the "Bylaws"). Plaintiff seeks advancement of $18,070 in legal expenses allegedly incurred from February 2025 through September 2025 in connection with responding to communications from the United States Small Business Administration ("SBA") regarding the Company's Economic Injury Disaster Loan ("EIDL") change in ownership and servicing requirements. Plaintiff also seeks fees-on-fees for this Action.

Defendant contends that Plaintiff is not entitled to advancement because the SBA related activities did not qualify as an "action, suit or proceeding" within the meaning of Section 145(e) and the Bylaws, that Plaintiff's fees were not incurred for "defending," and Plaintiff sought advancement only after the matter had reached its final disposition. Based on the record and governing instruments, Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant's Motion for Summary Judgment is **GRANTED**, and Plaintiff's request for fees-on-fees is **DENIED**.

## I.    FACTUAL BACKGROUND

By way of brief background, Plaintiff served as the Company's Chief Executive Officer and a member of its board of directors until October 11, 2024.[1] While serving in those capacities, the Company entered into an SBA EIDL note, which treated a change in ownership without prior written approval from the SBA as a default.[2] In connection with that loan, Plaintiff, signed the note on the Company's behalf and asserted he took on a risk of personal liability if the Company were to default.[3] A change-in-ownership transaction without securing the SBA's

---

[1] Docket Item ("D. I.") 1. at 2;  D.I. 20 at 4.

[2] D.I. 16 at 2–3.

[3] D.I. 20 at 1.

prior approval would constitute a non-monetary default.[4]   Plaintiff formally identified and documented a material compliance risk under the Company's EIDL loan with the SBA.[5]

On October 11, 2024, Plaintiff and the Company executed a Separation Agreement and General Release of Claims ("Separation Agreement").[6]   Plaintiff asserts that shortly after his departure from the Company the SBA advised that it had become aware of a change in ownership that allegedly occurred without its prior approval.[7] On October 16, 2024, an SBA loan specialist and representative informed the Company that the change in ownership, without the SBA's knowledge, could result in a demand letter concerning the Company's loan obligations.[8]

On April 23, 2025, the SBA provided options to address the issue and warned that absent a response within 48 hours, a demand letter would issue, requiring payment in full within 30 days or a referral to the United States Attorney's Office and the Treasury Department for collection proceedings.[9]   Because Plaintiff

---

[4]  *Id.*

[5]  D.I. 16 at 2.

[6]  D.I. 17 at 3.

[7]  D.I. 16 at 3.

[8]  D.I. 20 at 4.

[9]  *Id.* at 4.

remained obligated under the EIDL documentation that he had executed during his tenure as Chief Executive Officer, he retained counsel to assist in responding to the SBA's communications.[10]    Plaintiff incurred legal fees totaling $18,070 in connection with the SBA compliance matter.[11]

On August 1, 2025, Plaintiff sent the Company a letter entitled "Undertaking for Advancement of Expenses."[12]  As the undertaking was not tied to any specific dispute, the Company acknowledged receipt and informed Plaintiff no action was needed absent a particular matter.[13]  Plaintiff viewed the undertaking to apply prospectively to qualifying advancement claims.[14]

On August 21, 2025, the SBA advised that the request for approval of the ownership change had received preliminary approval subject to execution of the remaining change-in-ownership documents.[15]  The following day, the SBA informed

---

[10]  *Id*. at 4–5.

[11]  D.I. 1 at 1.

[12]  D.I. 17 at 4.

[13]  *Id*.

[14]  D.I. 20 at 6.

[15]  *Id*. at 5.

the parties that the necessary documents had been prepared and directed that the executed documents be returned within twenty-one days.[16]

On November 17, 2025 Plaintiff demanded payment of $18,070 for SBA/EIDL-related legal fees, citing the Bylaws and 8 Del. C. § 145(e).[17] On December 5, 2025, the Company stated that although the indemnification and advancement obligations were not applicable, it was nonetheless willing to consider reimbursement of Plaintiff's legal fees.[18] Plaintiff commenced this action on January 5, 2026, seeking a determination that he is entitled to advancement under 8 Del. C. § 145(e) and Article VIII of the Company's Third Amended and Restated Bylaws, together with fees incurred in enforcing those rights.[19]

## II.    ANALYSIS

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[20] "Under Court of Chancery Rule 56, '[t]he movants have the initial burden of demonstrating the absence of a material factual dispute. If the movants meet their burden, the

---

[16] *Id.*

[17] *Id.* at 6–7.

[18] D.I. 20 at 7.

[19] *See generally* D.I. 1.

[20] Ct. Ch. R. 56(c)

burden shifts to the nonmovant to present some specific, admissible evidence that there is a genuine issue of fact for a trial.'"[21] "Summary judgment is an appropriate way to resolve advancement disputes because 'the relevant question turns on the application of the terms of the corporate instruments setting forth the purported right to advancement and the pleadings in the proceedings for which advancement is sought.'"[22]

Section 145(e) of the Delaware General Corporation Law ("DGCL") authorizes the advancement of expenses incurred by officers and directors "in defending" an action, suit, or proceeding "in advance of the final disposition" upon receipt of an undertaking.[23] Additionally, "'[i]n determining whether to award advancement[,]' the Court will 'look to the plain meaning of the advancement provision[s]' in the governing instruments."[24] The Court therefore turns to the governing advancement provisions.

Article VIII, Section 3 of the Bylaws adopts materially identical language and provides that the Company "shall pay expenses incurred by an officer or director,

---

[21] *Rhodes v. bioMerieux, Inc.*, 2024 WL 669034, at *7 (Del. Ch. Feb. 19, 2024) (internal citations omitted).

[22] *Id*.

[23] DGCL 145(e).

[24] *Rhodes*, 2024 WL 669034, at *7.

and may pay expenses incurred by any other employee or agent, in defending a civil or criminal action, suit or proceeding in advance of the final disposition of such action, suit or proceeding upon receipt of an undertaking by or on behalf of such person to repay such amount if it shall ultimately be determined that he is not entitled by the Corporation."[25] Thus, to establish entitlement to advancement under either Section 145(e) or the Bylaws, Plaintiff must demonstrate that: (1) he is a qualifying corporate official; (2) he incurred expenses in defending an action, suit, or proceeding; (3) he sought payment before the final disposition of that proceeding; and (4) he provided the required undertaking. Only the second and third requirements remain disputed.

**A.      Whether the SBA matter is an "action, suit, or proceeding."**

Plaintiff argues the SBA communications and deadlines reflected an articulated enforcement pathway, amounted to a threatened administrative proceeding entitling him to advancement.[26] Defendant argues that the SBA compliance matter did not constitute an "action, suit or proceeding," rather characterizing it as preparing and filing corrective paperwork.[27] The Court

---

[25] *See* D.I. 1, Ex. A.

[26] D.I. 16 at 5.

[27] D.I. 17 at 2 and 11–12.

disagrees. On this record, Plaintiff asserts he was subject to personal exposure and undertook response activity after the SBA articulated consequences.[28] Furthermore, the SBA treated Plaintiff as the responsible owner/officer and required his participation and signatures on change-in-ownership documents.[29] Those features are consistent with a proceeding for purposes of the governing instruments.

### B. The demand was not made "in advance of the final disposition."

Section 145(e) and Article VIII, Section 3 limit advancement to expenses paid "in advance of the final disposition" of the underlying matter.[30] The statutory text and Bylaws both use this timing limitation. Plaintiff incurred fees from February 2025 through September 2025 and demanded payment on November 17, 2025.[31] By late August 2025, the SBA had issued preliminary approval and generated change-in-ownership documents with a directive to return them within 21 days.[32]

Plaintiff argues that final disposition requires a "final, non-appealable" conclusion and points to continuing guaranty exposure.[33] The dispositive question

---

[28] D.I. 1, Ex. D (Email from Plaintiff stating that his undertaking would "remain in effect on a going-forward basis.").

[29] D.I. 16 at 3–4.

[30] DGCL 145(e); D.I. 1, Ex. A.

[31] D.I. 17 at 3.

[32] D.I. 20 at 5.

[33] D.I. 21 at 10–13.

is whether, on this record, the proceeding remained pending when Plaintiff made his demand. The record does not reflect ongoing administrative activity after the 21-day period. By November 17, 2025, the SBA had preliminarily approved the change in ownership, generated documents, directed their return within a defined window, that return period had passed, and there were no additional administrative proceedings after that window. Accordingly, the record supports a finding that the demand came after final disposition for purposes of § 145(e) and the Bylaws.

The statutory framework distinguishes advancement from indemnification. Advancement permits payment of expenses "in advance of the final disposition" upon an undertaking, whereas indemnification addresses reimbursement after resolution.[34] "A grant of advancement rights is essentially a decision to advance credit to the company's officers and directors because the officer or director must repay all sums advanced to him if it is later determined that he is not entitled to be indemnified."[35] Because the record indicates that the demand post-dated the final disposition of the underlying proceeding, any remaining claim would sound in indemnification rather than advancement.

---

[34] *See* DGCL 145(e); *see also Homestore, Inc. v. Tafeen*, 888 A.2d 204, 211 (Del. 2005).

[35] *Majkowski v. Am. Imaging Mgmt. Servs., LLC*, 913 A.2d 572, 586–87 (Del. Ch. 2006).

Applying the foregoing, Plaintiff incurred legal fees between February 2025 through September 2025 and demanded payment on November 17, 2025.[36] Plaintiff did not request advancement while the matter remained pending. Instead, Plaintiff waited until November 17, 2025—after the fees had been incurred, after the SBA had issued preliminary approval, and after the remaining administrative completion process had concluded—to submit his advancement demand.[37] At that point, the relief Plaintiff sought was no longer advancement in any meaningful sense. This distinction is not merely conceptual. It appears directly in the statutory text. Section 145(e) authorizes payment only "in advance of the final disposition" of the proceeding.[38] Article VIII, Section 3 employs precisely the same limitation.[39] The phrase does not merely identify the mechanics of payment. Rather, it defines the scope of the advancement remedy itself.

Plaintiff resists this conclusion by arguing that "in advance of the final disposition" governs only the timing of payment and not the availability of the advancement remedy itself.[40] Plaintiff principally relies upon *Day v. Diligence,*

---

[36] D.I. 17 at 3.

[37] *Id*. at 4.

[38] DGCL 145(e).

[39] *See* D.I. 1, Ex. A.

[40] D.I. 21 at 8–9.

*Inc.*[41] The Court does not read *Day* broadly. The Court in *Day* addressed a different question. There, the Court considered whether fees incurred before delivery of a proper undertaking were categorically excluded from advancement. The Court concluded they were not.[42] Nothing in *Day* suggests that advancement remains available after the underlying proceeding has concluded. Indeed, adopting Plaintiff's interpretation would effectively erase the phrase "in advance of the final disposition" from both Section 145(e) and the Bylaws.

Plaintiff also argues that final disposition never occurred because he remained potentially liable under his guaranty obligations.[43] That argument conflates continuing contractual exposure with the existence of a pending administrative proceeding. The relevant inquiry is whether the SBA proceeding remained pending. Plaintiff identifies no competent evidence that the SBA continued active administrative proceedings after September 2025. The speculative possibility of future disputes arising under the loan documents does not establish that the administrative proceeding itself remained pending.

---

[41]  2020 WL 2214377 (Del. Ch. May 7, 2020).

[42]  *Id*. at 1.

[43]  D.I. 16 at 8;  D.I. 21 at 10.

Additionally, Plaintiff contends that the mandatory language of Article VIII, Section 3 independently requires advancement and points to the "shall pay" language in support of his argument.[44] However, the same provision limits payment to expenses incurred "in advance of the final disposition" of the underlying proceeding, and as previously noted, the record supports a finding that the demand followed the final disposition.[45]

Finally, Plaintiff also seeks fees-on-fees. Under Delaware law, a party who successfully establishes that advancement was wrongfully withheld may recover the reasonable fees incurred in enforcing that right.[46] Because Plaintiff is not entitled to advancement, his request for fees-on-fees is denied.

## III. CONCLUSION

The Court concludes that the SBA compliance matter qualifies as an "action, suit or proceeding," and Plaintiff incurred expenses "in defending" it pursuant to § 145(e) and Article VIII, § 3. On this record, however, the demand for advancement

---

[44] D.I. 1, Ex. A.

[45] *Id.*

[46] *See Leiske v. Kidd*, 2026 WL 265493, at *5 (Del. Ch. Feb. 2, 2026) ("Under settled Delaware law, fees-on-fees are awarded to a successful plaintiff in an advancement action to prevent the victory from being pyrrhic.").

was made after the final disposition. Advancement is therefore unavailable. Any remedy would be for indemnification rather than advancement.

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **DENIED**. Defendant's Motion for Summary Judgment is **GRANTED**. Plaintiff's request for fees-on-fees is **DENIED**.

This is my Final Report. In accordance with Court of Chancery Rule 144, any exceptions shall be filed within three days.

Respectfully submitted,

*/s/ Loren Mitchell*

Magistrate in Chancery